UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

KOHL'S DEPARTMENT STORES, INC.,

        Plaintiff,

  -against-

RONGRANT ASSOCIATES, LLC,

        Defendant.
----------------------------------------------------------------X

MEMORANDUM & ORDER

04-CV-4907 (NGG)(MDG)

**NOT FOR PUBLICATION**

GARAUFIS, District Judge.

The plaintiff Kohl's Department Stores, Inc. ("Kohl's") brings this breach of contract action alleging that the defendant Rongrant Associates, LLC ("Rongrant") violated the terms of its lease agreement by requiring Kohl's to pay its proportionate share of public liability insurance with respect to common areas of the Ronkonkoma Shopping Center. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Rongrant moves to dismiss Kohl's complaint. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Kohl's cross-moves for summary judgment. For the reasons set forth below both Rongrant's motion to dismiss and Kohl's cross-motion for summary judgment are DENIED.

**I.    BACKGROUND**

On February 1, 1983 Rongrant and Caldor, Inc. entered into a lease agreement ("the Lease") for the Lake Ronkonkoma Shopping Center, located in Lake Ronkonkoma, New York. (Amend. Compl. ¶ 6.) On March 1, 1999, the Lease was assigned to Kohl's pursuant to an assignment and assumption agreement ("the Assignment") executed by Kohl's and Caldor, whereby Kohl's assumed Caldor's rights, title, and interest in the lease. (Id. ¶ 7.)

After Kohl's assumed the Lease, it audited the Lease, as well as other leases it had assumed from Caldor at different locations, for discrepancies and errors. (Affirm. Scott Kleibor ¶ 3.) On December 3, 2002, Kohl's wrote to Rongrant regarding several issues with the Lease, including Kohl's obligation to pay for its pro rata share of public liability insurance for common areas. (Kohl's Notice of Cross-Motion, Ex. A.) On December 31, 2002, Rongrant informed Kohl's that like Caldor, its predecessor in interest, Kohl's was responsible for its share of liability insurance. (Rongrant Notice of Motion, Ex. F.) Since December 2002, Kohl's asserts it has paid insurance costs under protest, which it claims now amounts to $185,128.00 above its legal obligations under the Lease. (Affirm. Scott Kleibor ¶ 8.)

## II. STANDARD OF REVIEW

Under New York law,[1] "[t]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). Typically, the best evidence of intent is the contract itself; if an agreement is "complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms." Id. If the contract is ambiguous, extrinsic evidence may be considered "to ascertain the correct and intended meaning of a term" or terms. Alexander & Alexander Servs. Inc. v. These Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998). "[A]mbiguity exists where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as

---

[1] Where, as here, a federal court is sitting in diversity, it applies the substantive law of the forum state. Curley v. AMR Corp., 153 F.3d 5, 12 (2d Cir. 1998).

generally understood in the particular trade or business." World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184 (2d Cir. 2003) (internal quotation marks omitted). "Whether or not a writing is ambiguous is a question of law to be resolved by the courts." W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 162 (1990). Accordingly, issues of contract interpretation are generally matters of law and therefore suitable for disposition on a motion to dismiss. See Thayer v. Dial Indus. Sales, Inc., 85 F.Supp.2d 263, 269 (S.D.N.Y. 2000) (citations omitted).

Under New York law, an interpretation of a contract that has "the effect of rendering at least one clause superfluous or meaningless ... is not preferred and will be avoided if possible." Garza v. Marine Transp. Lines, Inc., 861 F.2d 23, 27 (2d Cir. 1988). Instead, an interpretation that "gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." Rothenberg v. Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985). See, e.g., Corhill Corp. v. S.D. Plants, Inc., 9 N.Y.2d 595, 599 (1961); Muzak Corp. v. Hotel Taft Corp., 1 N.Y.2d 42, 46 (1956). Thus, when interpreting the Lease, I must consider the entire document and choose the interpretation "which best accords with the sense of the remainder of the contract." Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 347 (1955).

### III. DISCUSSION

#### A. Under the Unambiguous Terms of the Lease, Rongrant is Responsible for Payment of Common Area Liability Insurance

The instant dispute centers around Section 9 of the Lease, which addresses landlord and

3

tenant obligations to common areas of the shopping center.[2] Section 9(D) of the Lease provides in relevant part:

> Landlord, at its sole cost and expense, will maintain public liability insurance with respect to the common areas[.]

Section 9(E) of the Lease, which details Rongrant's responsibilities in maintaining common areas, provides in relevant part:

> Landlord agrees that it will keep in good repair and condition all common areas of the Shopping Center, including, without limitation, landscaping, lighting systems and the drainage system serving said common areas and utility lines, that it will keep the parking areas and driveways suitably paved and marked for parking and traffic flow, that it will provide police officers for directing traffic when the same shall be necessary, that it will keep all common areas reasonably free of refuse and obstruction and reasonably free of snow and ice to the extent required by the business operations of the stores within the Shopping Center and that it will keep the common areas and the identification panels on the Pylon Sign adequately lighted during all times when the demised premises shall be open for business and for a reasonable period of time thereafter, provided, however, that Landlord shall be entitled to impose a special charge for the cost of illuminating the common areas and identification panels on the Pylon Sign upon any tenant which remains open beyond reasonably normal business hours. *The cost to Landlord of fulfilling its obligations under the foregoing provisions of this Section (E), to which shall be added fifteen (15%) percent respecting such costs, to cover Landlord's overhead as well as the costs for Landlord's insurance covering the common areas as required by this lease, shall be known as the "common areas maintenance cost".*

(emphasis added).

Section 9(F) of the Lease provides in relevant part:

> Landlord and Tenant agree that Tenant's share of common area maintenance costs for the first sixty (60) months after the rent commencement date will aggregate forty thousand dollars ($40,000.00) per year.

---

[2] Because Kohl's did not attach a copy of the Lease to its complaint, Rongrant included the Lease with its motion to dismiss. "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).

4

> ...
> After said first sixty (60) month period, Tenant's common area maintenance costs shall be a sum equal to the product of "Tenant's Fraction" (hereinafter defined) multiplied by the "common area maintenance cost" for said year.
> ...
> Tenant's Fraction is that fraction the numerator of which shall be the number square feet of floor area within the demised premises ... and the denominator of which shall be the number of square feet of floor area within all the buildings of the Shopping Center.

The parties offer two divergent interpretations of the Lease. Kohl's argues that it is not required to pay for liability insurance because Section 9(D) unambiguously requires the landlord to assume the sole cost of liability insurance for common areas. Rongrant contends that Kohl's isolated focus on Section 9(D) of the Lease would render the express language of Section 9(E) meaningless because, according to Rongrant, Section 9(E) defines common area maintenance costs ("CAM") as the cost of the services listed in Section 9(E) "*as well as*" the cost of common area liability insurance. Because Kohl's is required to pay its pro rata share of CAM under Section 9(F), Rongrant asserts that Kohl's is obligated to pay for liability insurance, since this is part of CAM.

Having fully considered the interpretations set forth by both parties, I find that Kohl's interpretation best gives a reasonable meaning to all the terms of the Lease. See Rothenberg, 755 F.2d at 1019. As correctly stated by Kohl's, Section 9(D) unambiguously requires that the landlord maintain public liability insurance with respect to the common areas of the mall at "its sole cost and expense."[3] In addition, contrary to Rongrant's assertions, Section 9(D) is not inconsistent with Section 9(E). Section 9(E) provides that "[t]he cost to Landlord of fulfilling its

---

[3] In a footnote, Rongrant claims that Section 9(D) merely places "the initial obligation to obtain the liability insurance" on the landlord. (Rongrant Mtn. Dismiss at 12 n.9.) However, there is no support in the text of Section 9(D) for this interpretation.

obligations under the foregoing provisions of this Section (E), to which shall be added fifteen (15%) percent respecting such costs, to cover Landlord's overhead as well as the costs for Landlord's insurance covering the common areas as required by this lease, shall be known as the "common areas maintenance cost". The phrase "to cover Landlord's overhead as well as the costs for Landlord's insurance covering the common areas as required by this lease" is set aside by commas, and thus stands independent from the language that follows. See United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242 (1989). Thus, the reference to liability insurance in Section 9(E) is best read as an explanation for the fifteen percent overhead charge, rather than as requiring a separate charge to the tenant for liability insurance in direct contravention of Section 9(D). Whereas Rongrant would render the clear obligations of Section 9(D) superfluous, Kohl's interpretation is consistent with the text of the Lease and gives meaning to each subsection of Section 9. Accordingly, it is the only reasonable construction of the entire agreement.

Rongrant's other arguments in defense of its interpretation of the Lease are unpersuasive. Rongrant claims that "[i]t does not make sense that the Lease would attempt to tie rising insurance costs to 15% of other costs having nothing whatsoever to do with insurance." (Rongrant Reply Mem. at 4.) Beyond this brief assertion, Rongrant in no way demonstrates that offsetting the cost of insurance through a surcharge on separate maintenance fees in any way leads to a harsh or commercially absurd result. See In re United Merchants & Mfrs., Inc., 623 F.2d 804, 807 (2d Cir. 1980) ("A contract should be read, wherever possible, to achieve a result that is fair and sensible, not one that is harsh and inexplicable."). It is not the province of this court to weight the equities of the Lease. "A commercial lease, freely and intelligently negotiated by corporations possessing equal bargaining power may ultimately result in one party

having a greater long term benefit than the other." J.C. Penney Co. v. 1700 Broadway Co., 104 Misc.2d 787, 795 (1980). Tying insurance costs to a maintenance fee surcharge is not so patently absurd to cause this court to disregard the unambiguous text of Section 9(D).

Rongrant also asserts that Kohl's interpretation of the Lease would render meaningless the Lease's Percentage Rent Rider contained in Schedule I. The Percentage Rent Rider entitles the landlord to collect, as part of rent, a percentage of the tenant's sales but allows the tenant to deduct CAM payments in excess of $40,000 from this amount. (Rongrant Notice of Motion, Ex. B at 46-49.) Under Section 9(F), CAM costs are fixed at $40,000 for the first sixty months of the Lease and then shift to a pro rata contribution of the CAM costs described in Section 9(E). Rongrant appears to argue that Kohl's interpretation of the Lease would render this provision meaningless because absent the added cost of common area insurance fees, CAM would not exceed $40,000 and so there would not be the opportunity to take advantage of this deduction. However, Rongrant offers no textual support for its argument. The Rent Rider provision contains no reference whatsoever to liability insurance and how these costs are allocated. Thus, there is nothing contradictory in the text of Section 9(E) and the Rent Rider provision. Indeed, even if this court were to consider extrinsic evidence despite the lack of ambiguity in the Rent Rider provision,[4] Rongrant provides no data to suggest that CAM would never exceed $40,000 without including the costs of liability insurance. Considering the lack of apparent conflict between Kohl's interpretation of Section 9 and the Rent Rider provision, Rongrant's claim is unavailing.

---

[4] Because the text of the Lease is unambiguous, it is unnecessary to examine extrinsic evidence to discern the intent of the parties for the purpose of interpreting the Lease. Alexander & Alexander Servs. Inc., 136 F.3d at 86.

### B. Whether Kohl's Is Estopped From Bringing the Instant Claim is a Question of Fact Which May Not Be Decided On a Motion to Dismiss

Rongrant argues that even if Kohl's interpretation of the Lease is reasonable, Kohl's is estopped from disputing charges associated with the costs of liability insurance because Kohl's predecessor in interest, Caldor, accepted the terms of the lease as understood by Rongrant. Under New York law, "equitable estoppel also is binding on a grantee where the grantee 'at the date of his purchase or grant to him knew of the existence of facts which operate as a bar to the claim of the grantor.'" Int'l Chimney Corp. v. 26 West Spring Assocs., 167 A.D.2d 816, 817 (1990) (citations omitted). However, "the doctrine of equitable estoppel should be applied with caution when it affects the title to real property and with even greater caution when sought to be invoked against a subsequent owner." Id.

In International Chimney, the New York Supreme Court, Appellate Division, Fourth Department determined that a successor in title was estopped from denying the validity of a lease where it had knowledge of the terms of the lease and was aware that its predecessor in interest had been accepting rent under the lease. 167 A.D.2d at 817. Similarly in J.C. Penney Co., J.C. Penney, a subleasee for IBM, was estopped from challenging the percentage of building space it occupied where it never questioned the appropriateness of the agreed-upon percentage during its negotiations with IBM and the landlord. J.C. Penney Co., 104 Misc.2d at 794.

Rongrant appears to assert that because Kohl's knew that Caldor assumed the cost of liability insurance as part of the Lease, it cannot now dispute liability insurance charges several years after it assumed the Lease from Caldor. As Rongrant correctly acknowledges, the extent of Kohl's knowledge of Caldor's practice concerning the payment of liability insurance is a

8

question of fact. Accordingly, Rongrant's motion to dismiss on estoppel grounds is premature. Following discovery, should Rongrant believe that there is no genuine issue of material fact with regard to its estoppel claim, it may file a motion for summary judgment with this court.

## IV. KOHL'S CROSS-MOTION FOR SUMMARY JUDGMENT

Following Rongrant's motion to dismiss, Kohl's cross-moved for summary judgment. Although discovery has not yet commenced, Kohl's claims that summary judgment is appropriate in the present circumstances because its claims can be resolved based strictly on the text of the Lease. In making its motion, Kohl's appears to confuse the use of extrinsic evidence for the purposes of contractual interpretation with the separate purpose of evaluating an estoppel claim. As set forth above, where a contract is unambiguous, a court need not resort to extrinsic evidence to evaluate the contract's meaning. See Greenfield, 98 N.Y.2d at 569. Estoppel, by contrast, relates to the knowledge and conduct of the parties, regardless of how the terms of a contract are ultimately interpreted by a court. Thus, contrary to Kohl's assertion, Rongrant's estoppel claim cannot be resolved through a review of the Lease alone.

In the instant action, Rongrant has yet to answer Kohl's amended complaint, much less conduct any discovery. Having adopted Kohl's interpretation of the Lease, Rongrant is entitled to, *inter alia*, answer the amended complaint, set forth affirmative defenses, and conduct discovery. See Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."). Accordingly, Kohl's cross-motion for summary judgment is denied.

## V. CONCLUSION

As set forth above, Rongrant's motion to dismiss is DENIED and Kohl's cross-motion for summary judgment is DENIED. Rongrant shall serve its responsive pleading within twenty (20) days after notice of this Order.


SO ORDERED.

Dated: May 27, 2005 /s/ Nicholas G. Garaufis
      Brooklyn, N.Y. Nicholas G. Garaufis
                                                    United States District Judge